UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
                                                           :
L.A., individually and on behalf of minor                  :
child V.K.,                                                :
                                                           :
                    Plaintiffs,                            :
                                                           :
        -against-                                          :   1:20-cv-05616-PAC
                                                           :
New York City Department of Education,                     :
                                                           :   OPINION & ORDER
                    Defendant.                             :
                                                           :
-----------------------------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

      The Parties' submissions on this preliminary injunction motion offer more heat than light, but the proper resolution is both legally clear and factually simple: student V.K. will "stay put" at AHRC-Howard Haber Early Learning Center ("Howard Haber") in the Bronx, New York under the pendency provision of 20 U.S.C. § 1415(j) during the resolution of the ongoing dispute regarding his Individualized Education Program ("IEP"), and the New York City Department of Education ("DOE") will continue to pay for those services exactly as it did under V.K.'s last operative IEP. Inasmuch as Plaintiffs seek a preliminary injunction reaching this result, that motion is DENIED. The request for attorneys' fees and costs as *pendente lite* relied is also DENIED.

      To the extent Plaintiffs seek simple enforcement of the "automatic injunction" of 20 U.S.C. § 1415(j), with its recognized tuition protections, that relief is GRANTED.

**BACKGROUND**

I.    **Procedural Background**

The Plaintiffs in this case filed their Complaint on July 27, 2020.  Dkt. 3.  The Plaintiffs filed a motion for a preliminary injunction that same day, seeking injunctive relief under Federal Rule of Civil Procedure 65.  Plaintiffs ask the Court to order the DOE "to immediately fund the cost of V.K.'s enrollment at the New York State-approved [Howard Haber]" and "to enjoin Defendant from abandoning its legal obligation to offer V.K. a free appropriate public education and leaving V.K. without an IEP and educational setting for the current 2020–2021 school year, where an appropriate setting at []Howard Haber remains available to V.K."  Dkt. 4, at 1–2.  The Plaintiffs submitted a proposed order to show cause on August 4, 2020, Dkt. 7, and this Court entered an amended version of the Order on August 7.  Dkt. 10.

The DOE filed its opposition[1] to the motion on August 21, and the Plaintiffs Replied on August 24.  Dkts. 16, 18.  A telephonic Conference on whether this Court should issue a preliminary injunction was held on August 28, 2020.  Calendar Entry dated Aug. 27, 2020.

II.    **Factual Background[2]**

Plaintiff V.K. is a four-year-old, non-verbal preschool child with autism.  Dkt. 3, at 1.  On March 27, 2019, the DOE convened a Committee on Preschool Special Education ("CPSE")

---

[1] The DOE frames the Plaintiffs' claims this way in its Response:  "In this action, Plaintiffs seek public funding of their special education and related services at . . . [Howard Haber], a nonpublic school in the City of New York, pursuant to the 'pendency' or 'stay put' provision of the Individuals with Disabilities Education Act ('IDEA')."  Dkt. 16, at 1.

[2] The facts here are taken from the Plaintiffs' Complaint filed July 27, 2020 unless otherwise noted.

to develop an Individualized Education Program ("IEP") for V.K.  Dkt. 3, at 7.  V.K. subsequently began attending Howard Haber on April 8, 2019.  *Id.*  V.K. attended Howard Haber from April to June 2019, and from July 6 to August 9, 2019.  *Id.*  V.K. returned to Howard Haber in September 2019.  *Id.* at 8.  Howard Haber closed in mid-March 2020 in response to the COVID-19 pandemic.  *Id.* at 9.  The DOE's Committee on Special Education ("CSE") convened on May 6, 2020 to develop an IEP for V.K.'s 2020–2021 school year.  *Id.* at 10.

The Plaintiffs allege that, during the May 6 meeting, parent "L.A. expressed her desire for V.K. to repeat his pre-kindergarten year due to gaps and interruption in formal education and demonstrated regression.  Rather than considering and discussing L.A.'s request, Defendant's representative unilaterally converted the IEP meeting into an IESP . . . meeting.  An IESP is reserved for parents who have opted to place their child in a private or parochial school at the parents' own expense."  *Id.*  Plaintiff L.A. alleges she "never revoked her consent to the creation of an IEP and the provision of [a] [Free Appropriate Public Education] [("FAPE")] to V.K. for the 2020–2021 school year."  *Id.* at 10–11.

The Plaintiffs subsequently filed a demand for a due process hearing with the DOE as well as an expedited pendency hearing with the Defendant's Impartial Hearing Officer.  *Id.* at 11.  The Plaintiffs allege that the DOE had not, as of July 27, developed an IEP for V.K.  *Id.* at 13.

The Parties entered a "Resolution Agreement" signed on July 29 by L.A.'s attorney and July 30 by the DOE.  Dkt. 7, Ex. 4.

**DISCUSSION**

I. **Legal Standards**

A. Standing

To bring a case in an Article III court, plaintiffs "must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.''" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The Supreme Court has made clear that the plaintiffs' injury-in-fact "must be both concrete *and* particularized," and that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016).

To satisfy the standing requirements of Article III, there must further "be a causal connection between the injury and the conduct complained of," and "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560–61.  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

B. Preliminary Injunction

"Ordinarily, to obtain a preliminary injunction, the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Ventura de Paulino v. N.Y. City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020).  "But where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved." *Id.*

The IDEA's "stay put" provision in 20 U.S.C. § 1415(j) provides that:

> [e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  This provision "reflect[s] . . . Congress's policy choice . . . that a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute, regardless of the merit of the child's IEP challenge or the outcome of the relevant proceedings." *Ventura de Paulino*, 959 F.3d at 531.

The "stay put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).  "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

### C. Administrative Exhaustion

When parents and educators disagree on the proper contents of a student's IEP, "[t]he parties may resolve their differences informally, through a '[p]reliminary meeting,' or, somewhat more formally, through mediation.  If these measures fail to produce accord, the parties may proceed to . . . a 'due process hearing' before a state or local educational agency.  And at the conclusion of the administrative process, the losing party may seek redress in state or federal court." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (internal citations omitted).  *See also Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017) ("Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court.").

"New York has opted for a two-tier administrative system for review of IEPs." *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).

"[T]he [IDEA] provides that potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court." *Polera v. Bd. of Ed. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002). However, exhaustion is not required in all instances under the IDEA. *Murphy v. Arlington Cent. School Dist. Bd. of Ed.*, 297 F.3d 195, 199 (2d Cir. 2002) (Sotomayor, J.). As concerns 20 U.S.C. § 1415(j)'s "stay put" provision, "[t]he administrative process is 'inadequate' to remedy violations" of that provision because "[a] belated administrative decision upholding a student's stay-put rights provides no remedy for the disruption already suffered by the student." *Id.* at 199–200.

## II.    Application

To settle the standing arguments raised by the DOE first, the Plaintiffs have alleged more than the sort of "bare procedural violation" barred by *Spokeo*. 136 S. Ct. at 1549. The DOE's argument is that the Plaintiffs have not alleged a "concrete" injury because their "primary prayer for relief is 'prospective payment,'" and that the action should therefore be dismissed. Dkt. 16, at 5. But it is certainly not the case that the injury alleged by the Plaintiffs here is "divorced from any concrete harm," nor is the alleged injury merely "procedural," *Spokeo*, 136 S. Ct. at 1549—rather, the IDEA "guarantees a substantively adequate program of education to all eligible children," *Endrew F.*, 137 S. Ct. at 995, and the Plaintiffs allege that this right has been infringed by the DOE. This alleged violation constitutes a sufficiently concrete injury-in-fact for standing purposes.

The Defendant further argues that there is no live controversy because the Plaintiffs seek "prospective funding." Dkt. 16, at 7. But there is a live dispute inasmuch as V.K. stands to suffer harm if he is not permitted to "stay put" at Howard Haber during the pendency of his IEP dispute. Because V.K. has a live dispute over his IEP for 2020–2021 and contends that the statutory protections of 20 U.S.C. § 1415(j) are not being observed, there is a judicially cognizable case or controversy.

As to the DOE's contention that the Plaintiffs must exhaust their administrative remedies before coming to the Court, the Plaintiffs here, in part, seek to enforce V.K.'s 20 U.S.C. § 1415(j) "stay put" rights pending his administrative process. Under *Murphy*, exhaustion is excused because in such cases "access to immediate interim relief is essential for the vindication of this particular IDEA right." 297 F.3d at 200. Therefore, exhaustion is no bar to the Court enforcing V.K.'s pendency rights under 20 U.S.C. § 1415(j).

Finally, the Defendant argues that the typical standard for a preliminary injunction should be applied here and the motion should be denied "because there is 'no meaningful threat' of harm to Plaintiffs." Dkt. 16, at 9. The Plaintiffs, meanwhile, argue that because the DOE has not appointed an IHO to hear their case, "L.A. has no means to enforce her child's right to an education unless [the Court] orders a preliminary injunction." Dkt. 18, at 8.

Here, because the "IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain [V.K.'s] educational status quo while the parties' IEP dispute is being resolved." *Ventura de Paolino*, 959 F.3d at 529. *See also Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. Mar. 14, 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such

factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships.").

The DOE points to *Ventura de Paolino* as support for its argument that L.A. should bear the risk of initial payments for V.K.'s education during the pendency of his IEP dispute. But *Ventura de Paolino* is inapposite here, where both the DOE and the Plaintiffs agree that Howard Haber was V.K.'s last "agreed-upon program." 959 F.3d at 532. Case law in the Second Circuit makes clear that the DOE is required to continue funding the student's last placement during the pendency of an IEP dispute, even when that last placement was a private school. *See, e.g.*, *Soria v. N.Y. City Dep't of Educ.*, 397 F. Supp. 3d 397, 400 (S.D.N.Y. Aug. 7, 2019) ("If the student's 'current educational placement' is in private school, the responsibility for private school tuition 'stays put' as well."). *Ventura de Paolino* does nothing to upset the DOE's obligation to continue funding the services afforded to V.K. under the last-operative IEP so long as he stays at the same private school during the pendency of his IEP dispute; in fact, *Ventura de Paolino* solidly supports the Court's conclusion today. 959 F.3d at 531 ("Congress's policy choice was that a child is entitled to remain in his or her placement *at public expense* during the pendency of an IEP dispute.") (emphasis added).

**CONCLUSION**

The motion for a preliminary injunction is DENIED, as is the request for *pendente lite* relief in the form of attorneys' fees and costs. The request for enforcement of 20 U.S.C. § 1415(j)'s pendency provision and of the DOE's continued funding of the services provided to V.K. under the last-operative IEP is GRANTED.

The Clerk of Court is directed to close the motion at Docket No. 4.

Dated: New York, New York
      September 1, 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge