UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

L.A., individually and on behalf of minor
child V.K.,

                       *Plaintiffs*,

          - against -

New York City Department of Education,

                       *Defendant.*

-------------------------------------------------------------X

1:20-cv-05616-PAC

**OPINION & ORDER**

       The COVID-19 pandemic has undoubtedly affected the educational experience of every school-aged child in America. This case deals with a student from a particularly vulnerable subset: children with disabilities protected by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Having already issued an order enforcing the IDEA's "stay put" provision[1] (Order & Op., ECF No. 19 (the "September 1 Order")), the Court now disposes of the present motion to dismiss, and in doing so, resolves the remainder of this case. Defendant New York City Department of Education ("Defendant" or "DOE")'s motion to dismiss Plaintiffs' complaint in its entirety is GRANTED for the reasons that follow.

## BACKGROUND

### I.  Procedural Background

       On July 2, 2020, the Plaintiffs filed with the DOE a demand for an expedited pendency hearing and a demand for a due process hearing regarding DOE's alleged failure to provide Plaintiff V.K. with an Individualized Education Program ("IEP") as the IDEA requires. Compl. ¶ 62, ECF No. 3. By July 27, when Plaintiffs filed their complaint with this Court, DOE had not

---

[1] 20 U.S.C. § 1415(j).

created an IEP for V.K.'s 2020–2021 school year ("SY"). Compl. ¶ 73. The complaint alleges

that DOE violated the IDEA; Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section

504");[2] Section 1983 of Title 42 of the U.S. Code, 42 U.S.C. § 1983 ("Section 1983"); and the

New York State Education Law.[3]

 Plaintiffs moved for a preliminary injunction that same day, asking the Court to order the

DOE "to immediately fund the cost of V.K.'s enrollment at the New York State-approved

AHRC-Howard Haber Early Learning Center [('Howard Haber')]" and "enjoin Defendant from

abandoning its legal obligation to offer V.K. a free appropriate public education [('FAPE')] and

leaving V.K. without an IEP . . . for the current 2020–2021 school year . . . ." Mot. for Prelim.

Inj. at 1–2, ECF No. 4. The parties subsequently entered into a "Resolution Agreement," signed

by Plaintiffs' attorney and DOE's representative on July 29 and July 30, 2020, respectively.

Partial Resolution Agreement at 3, ECF No. 7 Ex. D ("Resolution Agreement"). The Resolution

Agreement states that DOE will pay for V.K. to undergo several independent assessments, after

which the Committee on Special Education ("CSE") will hold an IEP meeting to review the

assessments and recommendations. *Id.* at 2. But the Resolution Agreement says nothing about

V.K.'s schooling in the meantime, so Plaintiffs pressed their motion for a preliminary injunction.

 On September 1, 2020, having previously entered an amended version of Plaintiffs'

proposed order to show cause (ECF No. 10) and after holding a telephonic conference on

whether the Court should issue a preliminary injunction (Dkt. Annotation under ECF No. 18),

the Court published its decision on Plaintiffs' preliminary injunction motion (September 1

Order). The September 1 Order denied Plaintiffs' request for a preliminary injunction and

---

[2] Plaintiffs' motion for a preliminary injunction alleged a violation of the Americans with
Disabilities Act, 42 U.S.C. § 12101 *et seq.*, but their complaint does not.

[3] Presumably N.Y. COMP. CODES R. & REGS. tit. 8 § 200.13, though Plaintiffs do not specify.

attorneys' fees *pendente lite* but enforced V.K.'s pendency placement at Howard Haber until his IEP dispute is resolved.  September 1 Order, at 9.  Following the Resolution Agreement and entry of the September 1 Order, six relevant items of Plaintiffs' requested relief remain outstanding: (1) an adjudication that V.K. will remain at Howard Haber for the remainder of the 2020–2021 SY; (2) compensatory education; [4] (3) additional services; (4) a declaratory judgment; (5) attorneys' fees; and (6) money damages.[5]  *See* Compl. 17; Compl. Ex. A, at 11–12.

Approximately two weeks later, Defendant moved to dismiss Plaintiffs' complaint.  Mot. to Dismiss, ECF No. 22.  That motion is presently before the Court.  As a threshold issue, Defendant argues that Plaintiffs lack standing because they have not suffered a concrete injury, as their "primary prayer for relief is 'prospective payment.'"  *Id.* at 5.  Defendant also argues that the complaint presents no live controversy because Defendant does not dispute V.K.'s entitlement to pendency funding.  *Id.* at 5–6.  Further, says Defendant, the Court should not hear this case because Plaintiffs failed to exhaust their administrative remedies prior to filing their complaint.  *Id.* at 7.  Finally, Defendant urges the Court to dismiss Plaintiffs' Section 1983 claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Id.* at 8.

---

[4] Compensatory education is a form of prospective equitable relief that requires a defendant to fund a child's education, beyond the expiration of the child's eligibility, as a remedy for prior educational deprivations.  *A.K. v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866 (JS) (SIL), 2019 WL 4736969, at *12 n.11 (E.D.N.Y. Sept. 27, 2019).

[5] Plaintiffs also seek "a permanent injunction directing Defendant to cease its application of the policies and practices alleged herein to Plaintiffs."  Compl. at 17.  But because the alleged policies and practices operated, according to Plaintiffs, to deprive V.K. of a free appropriate public education, and that deprivation would be remedied by compensatory education and a new IEP with the additional services that Plaintiffs request, the permanent injunction Plaintiffs seek is duplicative and would not afford any additional relief.

In response, Plaintiffs argue that (1) this Court already decided, in its September 1 Order, the issue of standing, thus estopping Defendant from raising it here (Pls.' Mot. in Opp'n 6–7, ECF No. 24); (2) Plaintiffs need not exhaust administrative remedies in this case because doing so is futile and they are alleging systemic IDEA violations which the administrative process cannot remedy (*id.* at 7–8); and (3) the complaint properly states a claim for relief under Section 1983 (*id.* at 8–10). The Court has considered both sides' arguments and discusses them individually below.

## II.    Factual Background

V.K. is a nonverbal five-year-old child with autism. Compl. ¶¶ 2, 61. On March 27, 2019, the DOE's Committee on Preschool Special Education developed an IEP for V.K., and on April 8, 2019, V.K. began attending Howard Haber in the Bronx, New York. Compl. ¶¶ 40–41. V.K. remained at Howard Haber for the rest of the 2018–2019 SY and returned for the 2019–2020 SY. Compl. ¶¶ 42, 45. In March 2020, when the COVID-19 pandemic hit, Howard Haber closed its doors and switched to remote learning. Compl. ¶¶ 48–49, 56. On May 6, 2020, the CSE convened to develop an IEP for V.K.'s 2020–2021 SY. Compl. ¶ 57.

At the May 6 meeting, Plaintiff L.A. (V.K.'s mother) expressed to the CSE her desire that V.K. repeat his preschool year at Howard Haber rather than advance to kindergarten, given gaps in his instruction and "demonstrated regression" he had exhibited. Compl. ¶ 58. But "[r]ather than considering and discussing L.A.'s request, Defendant's representative unilaterally converted the IEP meeting into an [Individualized Education Services Program] [('IESP')] . . . meeting." *Id.* CSEs create IESPs for parents who elect to enroll their children in private or parochial schools at their own expense. *Id.* But L.A. alleges that she "never revoked her consent to the creation of an IEP and the provision of [a] [free appropriate public education] [('FAPE')] to V.K.

4

for the 2020–2021" SY. *Id.* She now seeks relief from this Court for Defendant's alleged failure to provide V.K. a FAPE.

## DISCUSSION

### I.  Applicable Law

#### A.  Standards for Challenges to Subject Matter Jurisdiction

When a defendant challenges the court's subject matter jurisdiction over a case, the court takes all facts in the complaint and attached exhibits as true—"unless contradicted by specific allegations or documentary evidence"—and "construe[s] all reasonable inferences to be drawn from those factual allegations in [the plaintiffs'] favor." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On such a challenge, the court is "free to consider materials extrinsic to the complaint." *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002).

#### B.  Article III Requirements for Subject Matter Jurisdiction

##### i.  Case-or-Controversy Requirement

Federal courts are empowered to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Accordingly, they lack subject matter jurisdiction over claims that do not present a case or controversy. "A live controversy, within the Article III jurisdiction of the federal courts, requires a plaintiff seeking relief and a defendant opposing that relief." *Amalgamated Clothing & Textile Workers Union v. J.P. Stevens & Co., Inc.*, 638 F.2d 7, 8 (2d Cir. 1980).

##### ii. Standing Requirement

Standing is part of the case-or-controversy requirement. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-MEDCO Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Thus, federal courts lack subject matter jurisdiction if the plaintiffs lack standing. *Id.* A party may raise the court's lack of subject matter jurisdiction—including because of plaintiffs'

lack of standing—at any time. *Id.* If at any stage in the proceedings, the court perceives that it

lacks subject matter jurisdiction over the case, the court must dismiss the case. *Cave v. E.*

*Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

To have standing, a plaintiff must show (1) she suffered a concrete, particularized, actual

injury; (2) which is fairly traceable to the defendant's actions; and (3) which a favorable court

decision is likely to redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A "bare

procedural violation, divorced from any concrete harm," will not satisfy (1)'s injury-in-fact

requirement. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

### C. Statutory Requirement for Subject Matter Jurisdiction:

#### Administrative Exhaustion Requirement

"A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court

of subject matter jurisdiction." *J.T. v. de Blasio*, No. 20 Civ. 5878 (CM), 2020 WL 6748484, at

*42 (S.D.N.Y. Nov. 13, 2020) (quoting *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-cv-6964

(NSR), 2019 WL 4600870, at *9 (S.D.N.Y. Sept. 21, 2019)). Plaintiffs must exhaust their

administrative remedies prior to bringing suit in federal court not only for IDEA claims, but also

for claims under other statutes seeking relief available under the IDEA. *Cave*, 514 F.3d at 245–

46. The IDEA compels this conclusion, because it says: "before the filing of a civil action under

such laws seeking relief that is also available under this subchapter, the procedures under

subsections (f) and (g) of this section shall be exhausted to the same extent as would be required

had the action been brought under this subchapter." 20 U.S.C. § 1415(l). With that statutory

command in mind, the Second Circuit has held that claims under the Americans with Disabilities

Act and Section 504 seeking injunctive relief and compensatory and punitive damages are

subject to the exhaustion requirement where the equitable relief sought is available under the

6

IDEA, even though the IDEA does not make damages available. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 486–88 (2d. Cir. 2002); *see also Cave*, 514 F.3d at 247.  The Second Circuit has also held that § 1415(l)'s command is broad enough to encompass complaints alleging violations of Section 1983 seeking relief available under the IDEA. *Cave*, 514 F.3d at 248.

In New York, the administrative process for challenging a failure to provide a disabled child with a FAPE consists of two steps: (1) Plaintiffs request a due process hearing, which an Impartial Hearing Officer ("IHO") presides over; after which (2) either party may appeal the IHO's decision to a State Review Officer ("SRO") of the New York Education Department. *Id.* at 245.  When the SRO issues a decision, the administrative process has been exhausted and an aggrieved party is free to file suit in federal court. *Id.*

Exceptions to the administrative exhaustion requirement exist, however.  Exhaustion is not required if: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *J.T.*, 2020 WL 6748484, at *43 (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)).  Plaintiffs bear the burden of establishing that one of these exceptions applies. *Id.*  As already noted in the September 1 Order, a claim alleging a violation of the IDEA's pendency provision is not subject to the exhaustion requirement. September 1 Order, at 7.  "But the exception that applies to a stay-put claim does not excuse Plaintiffs' other, FAPE-based claims from the exhaustion requirement." *J.T.*, 2020 WL 6748484, at *43.

7

## II. Application

### A. Article III Requirements

#### i. Case-or-Controversy

Contrary to Plaintiffs' argument, principles of estoppel do not apply to subject matter jurisdiction determinations. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). While res judicata does apply to jurisdictional determinations (*id.* at 702 n.9), it is not the case that a party who has previously lost a challenge for lack of subject matter jurisdiction is estopped from re-raising it when circumstances change—indeed, that is precisely what the doctrine of mootness is about. Thus, the Court's prior ruling, in its September 1 Order, that Plaintiffs had standing and a live controversy does not prevent Defendant from raising lack of standing and a live controversy now.

Defendant's argument that this matter presents no live controversy is, however, meritless. As the Court previously noted, "V.K. has a live dispute over his IEP for [the] 2020–2021" SY. September 1 Order, at 7. That dispute remains live because V.K. does not yet have an IEP, and Plaintiffs want additional services which Defendant does not want to give. If DOE really did not oppose Plaintiffs' demands, then it would have settled them fully in its Resolution Agreement, or after this Court's September 1 Order, or at any other time between July 2 and now. Telling the Court that there is no controversy because DOE does not oppose V.K.'s pendency—an issue the Court resolved months ago—while conveniently ignoring the rest of Plaintiffs' demanded relief does not remove the live controversy over the 2020–2021 IEP or Plaintiffs' alleged entitlement to damages and a declaratory judgment, all of which Defendant continues to oppose.

### ii. Standing

Likewise, Plaintiffs continue to have standing. Plaintiffs have suffered, and, until DOE gets V.K.'s 2020–2021 SY IEP in place, continue to suffer real, concrete harm. Plaintiffs allege that V.K. is missing out on the FAPE that the IDEA guarantees him. L.A. contends that DOE's current efforts are failing, and V.K. is regressing. That is certainly more than a bare procedural violation of the IDEA's requirements. The September 1 Order granting enforcement of the "stay put" provision did not transform Plaintiffs' harms from concrete to hypothetical. Plaintiffs' injuries are clearly traceable to Defendant's actions, and a favorable decision from this Court providing, *inter alia*, compensatory education to help remediate V.K.'s regression would likely redress those injuries. Thus, Plaintiffs have met all of *Lujan*'s requirements for standing and have presented a justiciable controversy. 504 U.S. at 560–61.

### B. Administrative Exhaustion Requirement

But Plaintiffs' claims are subject to the administrative exhaustion requirement, which Plaintiffs have failed to satisfy. Consequently, the Court lacks subject matter jurisdiction over this action and must dismiss Plaintiffs' complaint without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (explaining that when a court dismisses a case for lack of subject matter jurisdiction, it lacks the power to dismiss the case with prejudice).

Plaintiffs' complaint challenges "matter[s] relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education," 20 U.S.C. § 1415(b)(6)(A), and thus is properly brought before an IHO in the first instance. The main goal of the IDEA is to secure every disabled child a FAPE. *See Cave*, 514 F.3d at 245. All of Plaintiffs' claims rely on the same facts, the thrust of which is that Defendant failed to provide V.K. with a FAPE, and except for the claims for money damages, all seek relief available under

9

the IDEA. Thus, Plaintiffs' claims under Section 504, Section 1983, and the New York
Education Law fall within the ambit of the IDEA and are facially subject to the exhaustion
requirement along with Plaintiffs' IDEA claims.

Despite Plaintiffs' arguments to the contrary, none of the exhaustion exceptions are
applicable here. Plaintiffs contend that because of DOE's delay in appointing an IHO to hear
their due process complaint, resort to the administrative process would be futile, and their claims
are thus exempt from the administrative exhaustion requirement. Courts have indeed found
futility in cases where the IHO/SHO's decision was delayed anywhere from two months to two
years. *J.T.*, 2020 WL 6748484, at *43 (citing *M.G. v. New York City Dep't of Educ.*, 15 F. Supp.
3d 296, 303 & n. 44 (S.D.N.Y. 2014) (collecting cases)). Futility, however, "is not measured by
the fact that it takes time to hold hearings." *Id.* at *44. Like the *J.T.* plaintiffs, Plaintiffs first
argued that the administrative process was futile on July 27 (Mot. for Prelim. Inj. at 6–7), just 25
days after filing their due process complaint with DOE and "thereby falling within New York's
30-day resolution period before the City need even hold a due process hearing." *J.T.*, 2020 WL
6748484, at *44 (citing 34 C.F.R. § 300.510; *J.Z. v. New York City Dep't of Educ.*, 281 F. Supp.
3d 352, 363 (S.D.N.Y. 2017)). This Court, like Judge McMahon, is unwilling "to divorce this
lawsuit from the circumstances that precipitated it," namely, the COVID-19 pandemic. *Id.*
Instead, the Court "is prepared to make allowances for the fact that the pandemic will inevitably
result in delays in the holding of impartial hearings." *Id.* Therefore, "Plaintiffs' futility
argument is premature." *Id.* Moreover, DOE has been moving Plaintiffs through the
administrative process, as evidenced by the Resolution Agreement. The Resolution Agreement
provided Plaintiffs with some of their requested relief, showing that attempting resolution
through the administrative process is not futile.

Plaintiffs next argue that they are alleging systemic policies and practices in violation of the IDEA and other laws, which administrative officers are incapable of resolving. *See M.G. v. New York City Dep't of Educ.*, No. 19 Civ. 3092 (PAE), 2020 WL 4891190, at *3 (S.D.N.Y. Aug. 20, 2020); *F.C. v. New York City Dep't of Educ.*, No. 15 Civ. 6045 (PAE), 2016 WL 8716232, at *8 (S.D.N.Y. Aug. 5, 2016). But for this argument to work, Plaintiffs must adequately plead "systemic practices, as opposed to violations particular to [V.K.]." *See F.C.*, 2016 WL 8716232, at *8. Plaintiffs have failed to allege systemic violations. Rather, like the complaint in *Avaras*, 2019 WL 4600870, at *15, Plaintiffs' complaint focuses on how DOE's IEP process affected V.K. and gives no factual basis whatsoever from which the Court might infer that V.K.'s experience is representative of an endemic problem. In *Avaras*, the court found no basis for inferring a systemic problem where the Plaintiff's complaint cited metrics showing that the school district failed to meet New York targets in discrete areas but failed to allege any specific facts suggesting systemic policies or practices. 2019 WL 4600870, at *15. Here, we do not even have that much. Plaintiff points to no facts suggesting that DOE's actions or inactions affected anyone other than V.K. Thus, despite Plaintiffs' conclusory allegations that V.K.'s experience reveals systemic policies and practices, the complaint "instead reflect[s] a plaintiff-specific dispute over the quality or methodology of services, which is routinely and properly resolved through the administrative process." *F.C.*, 2016 WL 8716232, at *9.

Nor have Plaintiffs shown that the administrative process lacks the power to afford them adequate relief. Plaintiffs ask for six items of relief that remained outstanding following the September 1 Order and Resolution Agreement: (1) an adjudication that V.K. will remain at Howard Haber for the remainder of the 2020–2021 SY; (2) compensatory education; (3)

11

additional services; (4) a declaratory judgment; (5) attorneys' fees; and (6) money damages. Except for money damages, the IHO has the power to grant all the Plaintiffs' requested relief.

First, The September 1 Order will keep V.K. at Howard Haber until DOE resolves Plaintiffs' due process complaint. Given that it is now April and DOE has yet to appoint an IHO, it seems unlikely that this matter will be resolved prior to the end of the 2020–2021 SY, so V.K. will likely remain at Howard Haber under the September 1 Order for the remainder of the SY. But if DOE manages to resolve Plaintiffs' claims and issues a new IEP that puts V.K. someplace else before the SY is finished, Plaintiffs are not stuck. They can again initiate administrative proceedings challenging that new IEP, and again seek pendency from the IHO. Accordingly, the administrative process can grant Plaintiffs' request to keep V.K. at Howard Haber for the remainder of the 2020–2021 SY. Second, though the compensatory education Plaintiffs seek is an extraordinary remedy available only for gross violations of the IDEA, IHOs have the power to grant it. *See A.K. v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866 (JS) (SIL), 2019 WL 4736969, at *12 & n.11 (E.D.N.Y. Sept. 27, 2019). Third, insofar as Plaintiffs seek additional services—e.g., ABA therapy—they seek amendment of V.K.'s IESP, which the IHO can certainly award. Fourth, IHOs can grant declaratory relief. *Polera*, 288 F.3d at 486. Indeed, Plaintiffs included a request for a declaratory judgment in their due process complaint filed with the DOE. *See* Compl. Ex. A, at 12. Fifth, the IDEA authorizes an IHO to award attorneys' fees to a parent who is a prevailing party. *Polera*, 288 F.3d at 486; *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 207 (2d Cir. 2007) (holding that it was error for the district court to award attorneys' fees where complaint should have been dismissed for failure to exhaust administrative remedies). Finally, while money damages are unavailable under the IDEA, requesting them does not exempt Plaintiffs from the administrative exhaustion

requirement; instead, they simply must wait to bring any claims for money damages until after they have exhausted their administrative remedies. *See Cave*, 514 F.3d, at 247.

Because Plaintiffs' claims are seeking relief available under the IDEA and no exceptions apply, their claims are subject to the administrative exhaustion requirement, which Plaintiffs have not yet satisfied. Consequently, the Court lacks subject matter jurisdiction over this action and dismisses Plaintiffs' complaint without prejudice to its renewal after Plaintiffs complete the administrative process.[6] The Court does not make any conclusions regarding whether Plaintiffs have stated a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss, without prejudice. The Clerk of Court is directed to close the docket entry at ECF No. 22.

Dated: New York, New York
        ~~March~~, 2021
        April 5,

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

---

[6] Although Plaintiffs allege violations of New York State law, they do not list these alleged violations as a separate cause of action. To the extent that these allegations represent claims distinct from Plaintiffs' federal claims, they are dismissed for lack of supplemental jurisdiction. *See Cave*, 514 F.3d at 250 ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.").

13